**Affirmed and Opinion filed July 26, 2012.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

———————————

## NO. 14-11-00522-CR
———————————

### TIMOTEO RIOS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1163180**

---

## OPINION

Timoteo Rios appeals his conviction for capital murder, arguing that the trial court erred in denying his motion to suppress a confession he gave the police after his arrest because (1) the affidavit supporting the arrest warrant contained a false statement made knowingly or in reckless disregard of the truth, and (2) the remainder of the affidavit was insufficient to establish probable cause for his arrest. We conclude that even if the affidavit contained such false statements, the remainder of the affidavit was sufficient to

support the issuance of the arrest warrant, and therefore the trial court did not abuse its discretion in refusing to suppress the confession.   We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In the early evening of April 16, 2008, Tina Davila parked her car outside a Houston shopping center.   As Davila got out of her car, a gold-colored Ford Taurus pulled up alongside her.   A man got out of the front passenger seat and tried to grab Davila's money and car keys.   Davila, whose infant daughter was in the back seat, struggled with the man over the keys, crying "my baby, my baby."   The man pulled out a knife and stabbed Davila in the chest.   Davila continued to struggle with the man as he got back into the Taurus and, the man, yelling "get the f___ back," threw Davila's keys to the ground.   The Taurus sped away as Davila, bleeding, hobbled into a nearby store and collapsed.   Davila was dead by the time emergency services arrived.

Traci Burger, who was in the same parking lot that evening, observed the struggle and got "a good look" at the  attacker's face.   The attack was also recorded by the surveillance camera of a nearby store.   Without a named suspect, however, the attacker could initially be identified only as a young Hispanic male.   The night of the killing, Sergeant Mark Reynolds of the Harris County Sherriff's Office received a tip identifying appellant as the man who stabbed Davila and appellant's former brother-in-law, Kennedy Escoto, as the driver of the gold Taurus.   Sergeant Allan Beall, also of the Harris County Sherriff's Office, called Burger to view a photo spread featuring appellant and five other Hispanic maleswith similar physical features.   After viewing the photo spread, Burger told Beall she was "pretty sure" appellant was the man who stabbed Davila.

The next day, the police arrested Escoto on outstanding warrants.   In a police interview, Escoto confessed to his role as the driver of the gold Taurus and identified appellant as the man who stabbed Davila.  Armed with Escoto's statement and what he described in a probable-cause affidavit as Burger's "positive" identification, Reynolds

2

secured a warrant for appellant's arrest.   Appellant had fled the country in the wake of the murder investigation but was eventually tracked to a small town outside Michoacan, Mexico and, with the help of federal authorities, extradited back to Harris County in August 2008 to face capital-murder charges.

While in police custody, appellant confessed to the stabbing in a videotaped interview.   Before trial, appellant requested "an evidentiary hearing as to the truthfulness or reckless use of certain statements" contained in Reynolds's probable-cause affidavit and requested that appellant's videotaped confession be suppressed if the trial court concluded that the arrest warrant had been illegally obtained.   Although appellant did not specify in his motion what statements he believed were untruthful, he argued at the hearing that Reynolds had falsely stated in the probable cause affidavit that Burger had "positively identified" appellant as the man who had struggled with Davila when she had merely told Beall that she was "pretty sure" that appellant was the man she had seen.[1]

At the hearing, Burger testified that when she told Officer Beall she was "pretty sure," she actually meant "a hundred percent sure."   Beall similarly testified that Burger had identified appellant without hesitation and seemed certain about her identification, and Beall stated that he had understood Burger's identification as "positive" rather than tentative.   Nonetheless, Beall testified that he had relayed Burger's exact words—"pretty sure"—to Reynolds.   Reynolds testified that, as he understood Burger's identification from Beall,

> [Burger] felt confident that that was the person that had robbed her [Davila] and so I—you know I don't think anybody was ready to you know convict somebody based solely on that one identification but she was confident in it. That's the way I understood it and that's the way I relayed it to the district attorney.

---

[1] At the hearing, appellant further argued that Reynolds had omitted to mention Escoto's prior felony convictions in the affidavit; however, appellant does not raise this issue on appeal.

Asked if he considered Burger's a positive identification, Reynolds responded, "I think it had to be more positive than no ID, yes." The trial court denied appellant's motion to suppress the videotaped confession. The confession was later played at trial over appellant's objection. On the stand, appellant confessed to killing Davila but maintained that he had intended only to scare Davila by swinging the knife at her and did not realize he had stabbed her until he got back into his car.

The jury convicted appellant of capital murder and he was sentenced to life in prison by operation of law. In his sole issue on appeal, appellant argues that the trial court erred in denying his motion to suppress his videotaped confession to the police because (1) Reynolds knowingly, intentionally, or with reckless disregard for the truth misrepresented Burger's identification as "positive" in the probable cause affidavit; and (2) the remainder of the affidavit was insufficient to support the issuance of the arrest warrant.

## II. ANALYSIS

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under this standard of review, we will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete deference in determining historical facts, while reviewing de novo its application of the law to those facts. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Where, as here, the trial court does not file findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

Under the United States Supreme Court's decision in *Franks v. Delaware*, an arrest warrant must be voided—and any evidence obtained pursuant to the arrest warrant suppressed—if (1) the defendant can establish by a preponderance of the evidence that the

4

affidavit supporting the warrant contains a material misstatement that the affiant made knowingly, intentionally, or with reckless disregard for the truth; and (2) setting the false statement aside, the affidavit's remaining content is insufficient to establish probable cause. *Franks*, 438 U.S. 154. 155–56, 98 S. Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978); *Janecka v. State*, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996). Assuming, without deciding, that Reynolds's representation of Burger's identification as "positive" was both false and made intentionally, knowingly or in reckless disregard of the truth, we conclude that the remainder of Reynolds's probable-cause affidavit contained sufficient facts to support probable cause to arrest appellant. Consequently, we hold that the trial court did not abuse its discretion in denying appellant's motion to suppress.

In his affidavit, Reynolds stated as follows:

> On April 16, 2008, Affiant was assigned to investigate the murder of Tina Davila, hereafter called the Complainant, who at approximately 5:00 p.m. on this date was stabbed to death outside her vehicle in the parking lot of 5600 Uvalde Road . . . . Affiant went to this location on this date and spoke with Eric Shin, manager of the Cricket Cellular Store located at 5619 Uvalde Road. Shin provided Affiant with access to the store's surveillance video, which consisted of digital video recordings of the interior of the store and the immediate area in front of the store. Upon viewing this recording Affiant observed the images of a woman, later identified as the Complainant, exiting her vehicle directly in front of the Cricket Store at 5:02 p.m. At this time a Ford Taurus is seen pulling up beside the driver's side of the Complainant's vehicle. A young Hispanic male is seen exiting the passenger side of the Taurus and blocking the Complainant's path to the store. A struggle is observed between the Complainant and the male. The male is then seen getting back into the Taurus. The complainant follows the male and then another struggle appears to take place. The Complainant is then seen stumbling into the store and collapsing at the sales counter. Shin told Affiant that the Complainant was clutching her chest and bleeding when she entered the store and collapsed.
>
> Affiant spoke with Harris County Sherriff's sergeant, Ben Beall, a certified police officer, who stated that he interviewed Traci Burger, a witness found to be gainfully employed and a credible person. Per Sergeant Beall, Burger stated the following: She was in the parking lot at 5600 Uvalde Road, as

5

described above, and observed the Complainant, the young Hispanic male, and the struggle as described above. She also stated that as the Complainant followed the male after the first struggle, she could be heard screaming "my baby, my baby."

Affiant received a tip from a confidential informant who identified the Defendant as the young Hispanic male that murdered the Complainant. A known Harris County Sherriff's Office booking photograph of the Defendant was obtained and placed in a photospread along with five other photographs of males with similar physical characteristics. Sgt. Beall stated to Affiant that he showed this photospread to witness Burger and she positively identified the photograph of the Defendant as the person she observed struggling with the Complainant as described above.

Affiant conducted an interview with Kennedy Escoto, who after being given his legal statutory warnings gave a written and signed statement against [h]is interest that stated the following: Escoto was the driver of the Ford Taurus, seen in the video and described above. Escoto stated that the Defendant, who he knows by name and by sight as the Defendant, Timoteo Rios, was the passenger in the vehicle. Escoto stated that he and the Defendant observed the Complainant getting out of her vehicle and that she had some $20 bills in her hand. Escoto stated that the Defendant opened up his knife, jumped out of the car and tried to take the money from the complainant. Escoto stated that it was during the struggle that the Complainant was stabbed. Escoto stated that the Defendant got back in the Taurus with the Complainant's keys but then threw them out of the vehicle.

In assessing whether sufficient facts were included in the affidavit to support probable cause to arrest the accused, we are limited to the four corners of the affidavit. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004). We must interpret the complaint in a commonsensical and realistic manner, recognizing that the magistrate is permitted to draw reasonable inferences from the facts. *Id.*; *Rodriguez v. State*, 232 S.W.3d 55, 61 (Tex. Crim. App. 2007). "When in doubt, we defer to all reasonable inferences that the magistrate could have made." *Rodriguez*, 232 S.W.3d at 61.

Even after the statement concerning Burger's "positive" identification is excised, Escoto's statement alone is sufficient to establish probable cause to arrest appellant. Escoto, an eyewitness, directly named appellant as the man who wielded a knife while

6

trying to take cash from Davila and who stabbed Davila as the two struggled in the parking lot. Escoto described in detail the circumstances surrounding the stabbing. Appellant argues that "there is no statement as to why Reynolds believed Escoto's statement to be credible and reliable regarding his identification of [a]ppellant as being involved in the offense." But, when an affidavit contains information given by a named informant, the affidavit is sufficient to justify the issuance of an arrest warrant if the information given is sufficiently detailed to suggest direct knowledge on the informant's part—even if no direct statement is made about the informant's reliability or credibility. *Wilkerson v. State*, 726 S.W.3d 542, 545 (Tex. Crim. App. 1986). Escoto's statements, as relayed in the affidavit, demonstrate his direct knowledge of the circumstances surrounding Davila's death, including that (1) Escoto was the driver of the Ford Taurus; (2) appellant, whom Escoto knows by name and by sight, was the passenger in the Taurus; (3) Escoto and appellant watched as Davila exited her car, holding cash in her hand; (4) appellant opened up his knife, jumped out of the car, and tried to take the money from Davila; (5) Davila was stabbed during this struggle; and (6) appellant returned to the Taurus and threw Davila's keys out of their car. Further, according to the affidavit, Escoto's account matched up with what Reynolds saw on the Cricket Store's surveillance video.

Appellant contends that Escoto's credibility is in greater doubt than that of most named informants because "he was being questioned about his involvement for an offense that he committed" and "[h]is statement naming [a]ppellant as the other person could just as easily be Escoto attempting to name another person involved to askew [sic] his own involvement . . . ." To support the proposition that a named informant lacks credibility if he is being questioned about an offense that he committed, appellant cites *State v. Wester*, 109 S.W.3d 824 (Tex. App.—Dallas 2003, no pet.). The *Wester* case is not binding precedent on this court; but, in any event, we find it factually distinguishable from the case under review.

7

In *Wester*, the Dallas Court of Appeals held that an affidavit was insufficient to support a search warrant where the informant was "a suspect under arrest for the very drugs he claimed to have purchased from [the appellant] and was being interrogated at the police station when he gave his statement." *Id.* at 827. There, however, the court questioned the extent to which the informant's admission carried the weight of a statement against penal interest because the police had already found the drugs when the informant made his statement. *Id.*; *see Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) ("An admission against penal interest, even by a first-time informant, is a factor indicating reliability."). Here, at the time Escoto made his statement, there was nothing connecting him with the *crime under investigation* other than the tip of a confidential informant. Beall testified that Burger was unable to identify Escoto as the driver of the Taurus. Unlike in *Wester*, where the informant was under arrest for possession of the very drugs he claimed to have purchased from the accused, Escoto was not under arrest for his involvement in Davila's killing. He was arrested on outstanding warrants, not on a warrant procured because of his suspected involvement in Davila's murder. Further, the *Wester* court also emphasized another problem not present here—that the information contained in the affidavit there was not detailed. *See Wester*, 109 S.W. 3d at 827. As the court there noted,

> the only fact that specifically related to Wester was [the informant]'s statement that he purchased the drugs from Wester at Wester's residence just prior to being stopped. No other independently verifiable facts related to Wester, such as previous drug transactions, the location of the marijuana in the house, or the layout of the house, were alleged.

*Id.* Here, as described above, Escoto's statements indicate detailed knowledge of the circumstances surrounding Davila's death. His account of Davila's stabbing also matched up—according to the account set forth in the affidavit , which appellant does not contest on appeal—with the surveillance video described in the affidavit, providing independent verification for his account. Under these circumstances, Escoto's statement to the police was sufficient to establish probable cause for appellant's arrest.

In conclusion, after excising from the probable-cause affidavit Reynolds's challenged statement about Burger's "positive" identification of appellant as the man who attacked Davila, the remainder of Reynolds's affidavit was sufficient to justify the issuance of an arrest warrant even if Reynolds's statement regarding Burger's identification was false and made intentionally, knowingly, or with reckless disregard for the truth. Therefore, the trial court did not abuse its discretion in denying appellant's motion to suppress appellant's videotaped confession. We overrule appellant's sole issue on appeal.

## III. CONCLUSION

Having concluded that the trial court did not abuse its discretion in denying appellant's motion to suppress, we affirm the trial court's judgment.

/s/    Tracy Christopher
Justice

Panel consists of Justices Frost, Brown, and Christopher.

Publish — TEX. R. APP. P. 47.2(b).