**Opinion issued November 29, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00153-CR

## NO. 01-11-00154-CR

————————————

**LEON GAMBLE, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 1218476 and 1218477**

---

**MEMORANDUM OPINION ON REHEARING**

After the trial court denied his motion to suppress evidence obtained during

the execution of a search warrant, Leon Gamble, Jr. pleaded guilty to two counts of

possession with intent to deliver a controlled substance.[1] The trial court adjudged Gamble guilty and assessed punishment at twenty-five years' confinement on each count, with the sentences to run concurrently. In his sole issue on appeal, Gamble contends the trial court erred in denying his motion to suppress because the search warrant affidavit failed to establish probable cause given its reliance on unreliable hearsay, conclusory statements, stale information, and activity that was not illegal per se. We issued a memorandum opinion on March 29, 2012 in which we concluded that Gamble lacked standing to contest the search. Gamble has filed a motion for rehearing.[2] We deny Gamble's motion, withdraw our March 29 opinion and judgment, and issue the following in their stead. Our disposition of the appeal remains the same. We affirm the trial court's judgment.

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010).

[2] In our March 29 opinion, we based our holding on the State's argument that Gamble lacked standing to challenge the search of the premises at issue in this appeal because the record did not establish that Gamble owned the premises, exercised control or dominion over the premises, or had a possessory or other interest in the premises consistent with historical notions of privacy. On rehearing, Gamble has persuaded us that the State waived its standing challenge by characterizing the premises searched as Gamble's residence during the hearing on his motion to suppress. *See Wilson v. State*, 692 S.W.2d 661, 668 (Tex. Crim. App. 1984) (op. on reh'g) (recognizing that State may lose its right to challenge standing for first time on appeal if challenge is inconsistent with State's position in trial court). Accordingly, we now proceed with consideration of Gamble's sole issue on appeal.

## Background

M.D. Ratterman, a nineteen-year veteran of the Houston Police Department and a Sergeant Investigator with the narcotics diversion unit, investigates the diversion of pharmaceuticals for unlawful purposes. He obtained a search warrant of the trailer in which Gamble resided based on his affidavit that described the diversion of pharmaceuticals generally and Gamble's conduct in particular.

Sergeant Ratterman explained in his affidavit that "a trend in drug diversion is the utilization of the homeless/unemployed of Houston to acquire prescription drugs." A "crew leader" transports a group of homeless or unemployed men and women to "pain clinics" or provides group members with fraudulently obtained prescriptions. The members of the group hand over the filled prescriptions to the crew leader for "a payment of $15 or $20 or a fast food meal." Leon Gamble became the subject of the investigation of such unlawful prescription drug operations when police discovered that several vehicles involved in drug cases were rented by Gamble's wife.

HPD set up surveillance of Gamble at the premises described as follows:

[A] trailer located in a boot leg mechanic shop in the block of 2309 ½ Ferguson Way, Houston, in Harris County, Texas. The said trailer is brown in color and is one room situated on the west side of the lot with the front door facing south. The trailer . . . is constructed of a metal siding. The main entrance to the lot faces north. The lot is located on the south side of the roadway and typically has several vehicles in the lot with a gate across the front entrance into the lot[.]

3

Surveillance officers observed vehicles "owned by [Gamble and his wife] and rented by [his wife] . . . being used to transport crews." Specifically, officers observed persons using the vehicles meet with Gamble "at 2309 ½ Ferguson Way and transfer to him what [was] believed to be prescribed pills obtained at several known pharmacies." Officers, however, were unable to obtain a statement from any "homeless/unemployed person leaving 2309 ½ Ferguson [W]ay."

According to Sergeant Ratterman's affidavit, HPD also set up surveillance outside of a Houston-area pharmacy. There, officers observed a "crew" inside of a rented vehicle—a gold Saturn SUV reported as stolen from an Alamo Rental lot where Gamble's brother was employed. The driver of another vehicle—a blue Ford Fusion—waved to the driver of the gold Saturn. The driver of the blue Ford then drove to a nearby restaurant and parked. The driver of the gold Saturn followed and parked next to the blue Ford, at which point a male passenger in the blue Ford, whom Ratterman identified as Andre Roberson, exited the blue Ford, approached the gold Saturn, exchanged cash for four pharmacy bags, and placed the pharmacy bags in the blue Ford's trunk.

Sergeant Ratterman explained that HPD officers then intervened, taking the driver of the gold Saturn and Roberson into custody. The officers' search of the Ford turned up four pharmacy bags containing four bottles of Hydrocodone and four bottles of Alprazolam. Roberson told the officers that he was transporting the

4

pills to Gamble. Roberson further stated that "he drives to Ferguson Way and drives into a boot leg mechanic lot and that on the lot is a brown trailer with the front door facing away from the street." Ratterman immediately recognized the location described by Roberson as Gamble's trailer on Ferguson Way, which was already under surveillance. Roberson explained that the operation taking place inside the trailer involved four drivers who delivered prescription medications to Gamble each day. Roberson recounted that he had been in the trailer on Ferguson Way that morning, had seen multiple prescription drug bottles in the trailer, and knew that the prescription pill bottles are kept there. Ratterman confirmed with another officer that the trailer at Ferguson Way had been under surveillance since the time officers stopped the blue Ford and gold Saturn and that "no bags of pills or people carrying pills ha[d] left the location." A magistrate signed a warrant for the search of the trailer the same day.

Following the search, a grand jury indicted Gamble for two counts of possession with intent to deliver a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). Gamble moved to suppress all evidence seized during the search, arguing that the search warrant was obtained based on unreliable hearsay, conclusory statements, stale information, and activity that was not illegal per se. At the hearing on the motion to suppress, no evidence other than the search warrant and probable cause affidavit was offered by either

5

Gamble or the State. Both sides, however, tendered argument on the issues raised in Gamble's motion. After hearing the argument of counsel, the trial court denied Gamble's motion to suppress. Gamble pleaded guilty without an agreed recommendation as to sentencing, and the trial court certified his right to appeal.

**Standard of Review**

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review, giving almost total deference to the trial court's findings of historical fact that depend on credibility and reviewing de novo the trial court's application of the law. *See State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011); *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). When a trial court determines probable cause to support the issuance of a search warrant, however, there are no credibility determinations; rather, the trial court is constrained to the four corners of the affidavit. *See McLain*, 337 S.W.3d at 271. Courts apply a highly deferential standard in reviewing a magistrate's decision to issue a warrant because of the constitutional preference for law enforcement officials to obtain warrants rather than conduct warrantless searches. *See id.* After-the-fact, de novo review of the sufficiency of affidavits is disfavored. *See id.* at 272.

Under Texas law, "[n]o search warrant shall issue for any purpose . . . unless sufficient facts are first presented to satisfy the issuing magistrate that probable

6

cause does in fact exist for its issuance[,]" and "[a] sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested[.]" TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2011). The sworn affidavit must set forth facts sufficient to establish probable cause:

> (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched.

TEX. CODE CRIM. PROC. ANN. art 18.01(c) (West Supp. 2011).

Courts employ a totality-of-the-circumstances analysis for probable-cause determinations:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 2331 (1983) (citations omitted) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960)). "This 'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should

carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review.'" *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Our inquiry, then, is whether there are sufficient facts stated within the four corners of the affidavit, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a given location. *See Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *McKissick v. State*, 209 S.W.3d 205, 212 (Tex. App.—Houston [1st Dist.] 2006, pet ref'd).

## Motion to Suppress

In his sole issue on appeal, Gamble contends the trial court erred by not suppressing evidence obtained during the search of his trailer because the search warrant affidavit failed to establish probable cause given its reliance on unreliable hearsay, conclusory statements, stale information, and statements regarding activity that was not illegal per se.

### A.    Credibility and reliability of informant

Gamble first argues that Sergeant Ratterman's affidavit fails to establish probable cause because it does not contain any statement about Roberson's credibility or reliability as an informant and therefore does not provide a

substantial basis for crediting Roberson's hearsay statements about Gamble's prescription drug operation.

There is no bar on the use of hearsay to show probable cause so long as there is a substantial basis for crediting the hearsay. *See Wilkerson v. State*, 726 S.W.2d 542, 545 (Tex. Crim. App. 1986); *see also Jones v. State*, 338 S.W.3d 725, 734−35 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012); *McKissick*, 209 S.W.3d at 212 (holding task of magistrate in issuing search warrant "is to make a practical, common sense decision whether, given all the circumstances set forth in the warrant's supporting affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"). When a probable cause affidavit contains information given by a named informant, the affidavit is sufficient if the information given is sufficiently detailed so as to suggest direct knowledge on the informant's part.[3] *See Wilkerson*, 726

---

[3] Although Gamble makes his argument regarding whether Roberson's statements to Sergeant Ratterman were credible in his brief under a subheading referencing the uncorroborated statements of a co-conspirator—namely, "The affidavit urged the magistrate to base a probable cause finding on the uncorroborated statements of an alleged co-conspirator without any 'substantial basis' for crediting the hearsay"—Gamble does not contend, or cite to any authority establishing, that Roberson's credibility is in greater doubt than would be any other named informant's due to his status as an alleged co-conspirator. *See, e.g.*, *State v. Wester*, 109 S.W.3d 824, 826 (Tex. App.—Dallas 2003, no pet.) (recognizing that "there are varying degrees of credibility with respect to informants"). Rather, the extent of Gamble's argument is that Ratterman's affidavit is flawed because it

S.W.2d at 545 (holding that affidavit that did not allege credibility of named citizen informers was sufficient to justify issuance of arrest warrant when information imparted by named citizen informers adequately indicated they had personal or direct knowledge of matters they asserted); *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, writ ref'd) (determining that named informant's credibility was established by admission of drug trafficking and statements indicating informant's personal knowledge, including statement providing names of men from whom informant had purchased marijuana on several occasions, locating house where transactions took place, and describing where marijuana was hidden).

Here, the information imparted to Sergeant Ratterman by Roberson indicated that he had personal or direct knowledge of the matters he asserted. Roberson explained that he was personally involved in a prescription drug operation and identified Gamble by his full name as the individual to whom Roberson delivered prescription drugs. Roberson described the location to which he delivered the prescription drugs with sufficient detail—including the color, location, and orientation of the trailer—that officers immediately recognized it as the trailer already under surveillance. *See Abercrombie v. State*, 528 S.W.2d 578, 585 (Tex. Crim. App. 1974) (observing that affidavit provided such detail that it

does not "suggest that [Ratterman] has dealt with the arrestee [Roberson] in the past or that [Ratterman] found the arrestee [Roberson] credible."

10

could reasonably be inferred that informant gained his information in a reliable way). Roberson also had knowledge of how many drivers and deliveries were involved in Gamble's prescription drug operation and had personally observed prescription drugs in Gamble's trailer on the same day the search warrant was obtained. Roberson's description of how the prescription drug operation worked was also consistent with the activity observed by surveillance officers at the trailer. *See Gates*, 462 U.S. at 244, 103 S. Ct. at 2335 (holding that law enforcement's independent investigation corroborating information in anonymous tip lessened significance of informant's unknown honesty and reliability and stating that "[i]t is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay'") (quoting *Jones*, 362 U.S. at 271, 80 S. Ct. at 735−36; *see also Rios v. State*, 376 S.W.3d 238, 244 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that informant's version of events was consistent with what police had observed on crime scene surveillance footage). Moreover, Roberson's credibility was reinforced when he admitted his involvement in the prescription drug operation. *See Mejia*, 761 S.W.2d at 38 (holding that statements against penal interest provide additional credibility to informant's tips); *see also United States v. Harris*, 403 U.S. 573, 583−84, 91 S. Ct.

11

2075, 2081−82 (1971) (same). Under these circumstances, the failure of the affidavit to expressly state Roberson's credibility or reliability is not fatal.

## B.    Conclusory statements

Gamble further argues that Sergeant Ratterman's affidavit includes conclusory statements that render the affidavit insufficient to establish probable cause. Specifically, Gamble complains that the affidavit relied on "myriad bare, conclusory statements" to establish that (1) "Houston is suffering from a rash of fraudulent prescriptions and fraudulent prescription filling using 'crews' and homeless or unemployed people"; (2) "vehicles owned by [Gamble] and his wife, and vehicles rented by his wife," were being used to transfer prescription drugs to Gamble; (3) the Saturn SUV detained in the restaurant parking lot contained a "crew"; and (4) Gamble's possession of prescription drugs was unlawful.

Referring to conclusory statements and "bare-bones" affidavits, the United States Supreme Court noted in *Gates* that, "[i]n order to ensure that . . . an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." 462 U.S. at 239, 103 S. Ct. at 2332. As we previously noted, an affidavit for a search warrant is sufficient to establish probable cause if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. *Id.* at 238, 103 S. Ct.

12

at 2332. A mere conclusory statement will not suffice to show probable cause. *Id.* at 239, 103 S. Ct. at 2332−33. Reviewing courts should consider "whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at the specified location." *Rodriguez*, 232 S.W.3d at 62 (quoting *Davis v. State*, 202 S.W.3d 149, 157 (Tex. Crim. App. 2006)).

Here, interpreting the totality of the circumstances reflected in the affidavit in a common sense manner, we conclude that the affidavit did not rely on conclusory statements to such an extent that it was insufficient to establish probable cause. Even ignoring the statements Gamble asserts are conclusory, the affidavit contains sufficient facts from which the magistrate could conclude there was a fair probability that contraband or evidence of a crime would be found at Gamble's trailer. Sergeant Ratterman's affidavit explained, (1) Ratterman is a longtime peace officer specializing in the investigation of the diversion of pharmaceuticals for illegal purposes; (2) Gamble's trailer on Ferguson Way was under surveillance as part of an ongoing narcotics investigation; (3) the surveillance on Gamble's trailer was initiated after officers discovered that persons taken into custody in other drug possession cases were driving vehicles rented by Gamble's wife to transport crews to pain clinics and pharmacies; (4) during separate surveillance, officers observed a gold Saturn SUV reported as stolen from

13

an Alamo Rental lot where Gamble's brother was employed; (5) officers observed the driver of the gold SUV exchange prescription medications with Roberson for money; (6) officers apprehended Roberson in possession of four pharmacy bags containing four bottles of Hydrocodone and four bottles of Alprazolam; (7) Roberson had personal knowledge of Gamble's prescription drug operation as one of four drivers who take pills to Gamble at the trailer on Ferguson Way; (8) Roberson gave the address and described the appearance of the trailer from which Gamble operated and based on that description, officers immediately recognized the trailer as the same trailer under surveillance; (9) Roberson saw multiple prescription drug bottles when he was in Gamble's trailer on the day the search warrant was obtained; and (9) a surveillance officer confirmed that no one had left the trailer since Roberson was detained in the restaurant parking lot. The fact that the affidavit does not detail how officers became aware of the trend to divert prescription drugs in Houston, how officers knew that vehicles rented to Gamble's wife were used in drug cases, how the persons inside the Saturn SUV were identified as a "crew," or how officers knew the prescriptions delivered to Gamble were not prescriptions in his name, does not render the affidavit inadequate. Based on the totality of the circumstances, one could reasonably infer that Gamble was not lawfully in possession of at least some of the prescription

14

drugs in his trailer and that evidence of a crime would be found through a search of the trailer. Thus, the affidavit is not fatally flawed due to conclusory statements.

## C.    Staleness of information

Gamble's next complaint is a complaint about the "staleness" of the information contained in Sergeant Ratterman's affidavit. In particular, Gamble objects that the following statements regarding the existence of a trend by which pharmaceuticals are diverted for unlawful purposes using crews of homeless or unemployed persons and the use of vehicles rented by Gamble's wife in drug cases are without any temporal reference:

> Officers know from investigations and information from confidential sources and citizen complaints that a trend in drug diversion is the utilization of the homeless/unemployed of Houston to acquire prescription drugs. A "crew leader" will transport a group of homeless/unemployed to pain clinics or provide the person with a prescription obtained fraudulently. The homeless/unemployed person will then be directed or transported to a pharmacy to have [the] prescription filled. Once the prescription is filled the person will relinquish the prescription to [the] crew leader for a payment of $15 to $20 or a fast food meal. . . .
>
> Affiant and Houston Police Officer M. Robertson have observed the defendant, Leon Gamble, involved in several investigations. Officer Robertson, who was involved in those investigations, told your affiant that during her investigation she checked the ownership of vehicles involved in cases of Possession with Intent to Deliver cases [sic] where the defendants were taken into custody and found that they were driving rental vehicles when transporting crews to pain clinics and then to pharmacies. The vehicles involved were rented to [Gamble's wife]. M. Robertson and Affiant set up surveillance on Leon Gamble and observed vehicles owned by Leon and [his wife] and rented by [his wife] were being used to transport crews. The

vehicles would then meet with Leon Gamble at 2309 ½ Ferguson Way and transfer to him what your affiant believes to be prescribed pills obtained at several known pharmacies.

To issue a warrant, a magistrate must "determine (1) that it is *now probable* that (2) contraband . . . *will be* on the described premises (3) when the warrant is executed." *United States v. Grubbs*, 547 U.S. 90, 96, 126 S. Ct. 1494, 1500 (2006); *see also* TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West Supp. 2012) (providing, in pertinent part, that evidentiary search warrant may not be issued unless sworn affidavit sets forth sufficient facts to establish probable cause that items constituting evidence to be searched for are located at place to be searched). A magistrate must be able to ascertain from the affidavit the closeness of time of the event that is the basis for probable cause sufficient to issue the warrant based on an independent judgment of probable cause. *See, e.g.*, *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983). The facts attested to in the affidavit must be "so closely related to the time of the issu[ance] of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 140 (1932); *see also Peltier v. State*, 626 S.W.2d 30, 32 (Tex. Crim. App. 1981); *Heredia v. State*, 468 S.W.2d 833, 835 (Tex. Crim. App. 1971).

"Probable cause ceases to exist when, at the time the search warrant is issued, it would be unreasonable to presume the items remain at the suspected place." *McKissick*, 209 S.W.3d at 214; *see also Flores v. State*, 287 S.W.3d 307,

16

310, 312 (Tex. App.—Austin 2009), *aff'd*, 319 S.W.3d 697 (Tex. Crim. App. 2010). "The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued." *McKissick*, 209 S.W.3d at 214. "When the affidavit recites facts indicating activity of a protracted and continuous nature—*i.e.,* a course of conduct—the passage of time becomes less significant." *Id.*

While Sergeant Ratterman's failure to include the specific dates and times of events related to the diversion of pharmaceuticals and the unlawful use of rental vehicles is not a model of draftsmanship, the question before us is whether the lack of a specific date or time is fatal in this case or whether the totality of the affidavit nonetheless justified the magistrate's finding of probable cause. We note that Ratterman's affidavit recited facts that, when combined with the information provided by Roberson, indicated criminal activity of a continuous and protracted nature, making the passage of time between when Ratterman learned of the drug diversion trend or vehicle rental histories and when he described such information in his affidavit less significant. *See McKissick*, 209 S.W.3d at 214; *Jones*, 338 S.W.3d at 736−37 ("Facts indicating ongoing criminal activity have long been recognized as diminishing the importance of establishing a specific and immediate

17

time period in the affidavit[.]"); *Swearingen v. State*, 143 S.W.3d 808, 813 (Tex. Crim. App. 2004) (Cochran, J., joined by Myers, Price, and Johnson, J.J., dissenting) ("An ongoing enterprise tends to continue over time, but a single possession of a consumable contraband may be over with a gulp or snort and never reoccur."). More importantly, however, the totality of the facts stated in the affidavit justified the magistrate's finding of probable cause.

The affidavit was signed and the search warrant was issued on the same day as the pharmacy surveillance that resulted in Roberson's arrest. Roberson informed Sergeant Ratterman that Gamble received deliveries of prescription drugs four times per day. On the same day he was arrested, Roberson had observed prescription drugs inside of Gamble's trailer, and from the time Roberson was arrested, officers had not observed any prescription drugs being removed from the trailer, which was under continuous surveillance.[4] Thus, we do not find that Sergeant Ratterman's failure to include specific dates for certain relevant events is fatal in this case. It was not unreasonable for the magistrate to conclude that, at the time the search warrant was issued, illegally obtained prescription drugs could be found in Gamble's trailer.

---

[4]     In his briefing to this Court, Gamble does not complain of any delay between Roberson's observation of prescription drugs in Gamble's trailer and the issuance or execution of the search warrant.

**D.     Activity not per se illegal**

Gamble's final argument is that Sergeant Ratterman's affidavit fails to show probable cause because nothing in the affidavit suggests that the prescription drugs Roberson saw in Gamble's trailer and the ones confiscated from Roberson in the restaurant parking lot were anything but legitimate prescriptions from a valid practitioner. Gamble argues that, at best, the affidavit raises a suspicion of illegal activity, but fails to establish probable cause that contraband or evidence of a crime would be found in Gamble's trailer.

Probable cause requires only a fair probability or substantial chance of criminal activity, not a certain showing of such activity. *See Gates*, 462 U.S. at 246. "In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Id.* at 245 n.13.

Here, the circumstances observed by officers and attested to by Roberson create more than "just a hunch" that Gamble was not in lawful possession of prescription drugs. On the day the search warrant was obtained and executed, officers observed Roberson exchange cash for four pharmacy bags (which were determined to contain eight prescriptions) in a restaurant parking lot. Roberson told officers he was delivering the pills to Gamble and that other drivers did the same. The probable cause standard is not one of certainty. Based on these circumstances

19

alone, the magistrate was justified in relying upon the affidavit in concluding that a fair probability or substantial chance existed of finding illegally obtained prescription drugs at Gamble's trailer.

## Conclusion

Having considered all of Gamble's contentions that Sergeant Ratterman's affidavit was inadequate and applying the appropriate standard of review, we hold that the affidavit provided the magistrate with a substantial basis for concluding that a search would uncover evidence of criminal activity at Gamble's trailer. Accordingly, we overrule Gamble's sole issue on appeal, and we affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).