# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2022

Lyle W. Cayce
Clerk

No. 21-50193

Brandon Lee Moon,

*Plaintiff—Appellant*,

*versus*

Salvador Olivarez; Detective Jeffrey Dove,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-925

Before Jolly, Higginson, and Engelhardt, *Circuit Judges*.

E. Grady Jolly, *Circuit Judge*:

Appellant Brandon Moon spent seventeen years in prison for a rape he did not commit. He was exonerated and released from prison in 2004 after DNA evidence confirmed his innocence. In 2006, following his release, Moon filed suit against numerous individuals and entities he claimed were responsible for his imprisonment. Now, after fifteen years of litigation, Moon's only remaining claim is for false imprisonment under Texas state law against two retired El Paso, Texas detectives, Salvador Olivarez and Jeffrey Dove, who were involved in the investigation of his 1987 rape charges. The district court granted summary judgment on this one remaining claim in favor

of Olivarez and Dove after concluding, *inter alia*, that detectives Olivarez and Dove did not willfully detain Moon, an essential element for the false imprisonment claim. Because we find no error, we AFFIRM the judgment of the district court.

## I.

## A.

We turn the clock back some 30-plus years to review the relevant facts of the investigation and prosecution of the case against Moon. DM was raped at gunpoint in her home in El Paso, Texas on April 27, 1987. Detective Joe Villa was the lead detective investigating DM's sexual assault.

On April 29, 1987, two days after DM's assault, Villa called DM to ask if she could identify her attacker. She could, and she went to Villa's office that day. There, DM recounted the details of her sexual assault and provided Villa with a detailed physical description of her attacker and the weapon he used. DM stated that "she would recognize [her attacker] if she saw him again," and assisted Villa in creating a photo composite of the attacker's likeness.

That same day, Villa spoke with the defendant Detective Olivarez about DM's case. Villa showed Olivarez the composite DM had made,[1] and according to Olivarez's report, Olivarez told Villa that he "believed [he] recognized the subject to be [Moon.]" Olivarez then advised Villa to "check the computer so as to find [Moon's] PD number." He said that he "had read

---

[1] Moon disputes that the composite existed at the time of Olivarez and Villa's conversation. Olivarez stated in his report that he spoke with Villa "at about 1540 hours" (3:40 PM) on April 29, 1987. Villa, however, noted in his report that DM arrived at his office at 6:00 PM on April 29. Dove stated in his affidavit that DM arrived at the station at 4:00 PM on April 29.

No. 21-50193

a rape case on the same subject Moon from 1984[2] and also had booked him for Burglary of Habitation[3] around November" the year before.[4]  Olivarez, however, did not tell Villa that that the charges from the 1984 rape case had been dismissed, or that Moon had been acquitted of the 1986 burglaries. Olivarez never spoke to DM and following his single conversation with Villa had no further involvement in the investigation of DM's rape.

After his conversation with Olivarez, Villa "ran Moon's name though the computer" and "found" that Moon "had a criminal history [that] included an aggravated sexual assault."  Villa obtained Moon's police photo and created a six-picture photographic lineup.  Villa recalled DM to the station on April 29, 1987 to view the photographic lineup.  DM pointed to photo #3 as her attacker.  Photo #3 was Moon.  DM then became emotional and began to cry.  Villa instructed her to look carefully at the photo "so as to not make any mistake."  Villa stated in his report that DM reexamined the photographic lineup and again said that "she believed the person in photo #3 to be her attacker, but that to be absolutely certain, she would have to view the subject in person."  Villa told DM that she had "tentatively identified" a man named Brandon Moon.

---

[2] In 1984, Moon was arrested for the sexual assault of KW.  He was charged with aggravated rape and aggravated kidnapping.  The charges were later dismissed.

[3] Olivarez previously arrested Moon in November 1986 for two burglaries that occurred that same month.  Moon was acquitted following a jury trial.  Moon testified that after he was acquitted, Olivarez walked up to him and said: "I know you did this, and I'm going to get you."  Olivarez denies ever making such a statement.

[4] In his affidavit for a search warrant in a different case dated May 5, 1987, Detective Dove stated that Moon was "known by Detective Olivarez as a burglar."  Dove also testified in 2007 that Olivarez had "suggested [to Villa] that Brandon Moon was a known burglar at the time."

No. 21-50193

In her witness statement dated April 29, 1987, DM stated that after examining the photos, she "recognized that photo #3 looked very much like the person that raped me[, and that she felt] strongly that the photo is that of the person who raped me. However, I am not able to say for positively certain unless I could see the person live." In her witness statement dated April 30, 1987, DM stated that "I have tentatively identified the black and white photo of a man in picture #3 as the man who attacked me."

On April 30, 1987, three days after DM's sexual assault, Villa stated in his report that he "drew up an affidavit charging Brandon Moon with aggravated sexual assault[, and] [he] presented the affidavit to municipal court judge, Ricardo Herrera, and [Judge Herrera] issued warrant #M87-05895" for Moon's arrest. There is, however, no warrant in the record.[5] There is, in the record, the second page of Villa's April 30, 1987 probable cause affidavit, which bears Judge Herrera's signature and states that DM "pointed out [Moon's] photo" out of the photographic lineup and "recognized it as that of the subject who raped her, and did in fact believe that the defendant is the subject who raped her." Indeed, Villa arrested Moon in his dormitory room at the University of Texas at El Paso on May 1, 1987.

_____

[5] The existence of an arrest warrant in this case is a contested issue of fact raised by Moon. Moon argues that a reasonable jury could conclude that defendants arrested him without a warrant, and thus, without lawful authority. For support, he argues that there is no warrant in the record and the only evidence against him at the time of his arrest was the "tentative" identification by DM. We should note, however, that if the arrest warrant had been produced, the appeal could have been quickly decided because the detention *a fortiori* would have been lawful for the purpose of this case. *See Martinez v. Eng.*, 267 S.W.3d 521, 529 (Tex. App. 2008) ("[W]here an arrest is made pursuant to a valid arrest warrant . . . there is no cause of action for false imprisonment."). The absence of the warrant has required us to probe further into whether Moon's detention, *i.e.*, his arrest, was caused by these defendants-appellees.

No. 21-50193

B.

On May 2, 1987, following Moon's arrest, Detectives Dove and Villa conducted a physical lineup involving Moon to present to DM and two other crime victims: KN,[6] who had been sexually assaulted on November 25, 1985 and MD, whose residence was burglarized on March 3, 1986. Moon's attorney was not contacted, but Dove advised Moon of his rights and asked if he wished for his lawyer to be present. Moon declined. Dove failed to obtain a written waiver of Moon's rights as required by department policy. Olivarez had no involvement with the lineup.

The lineup consisted of Moon and four police officers, which was another violation of department procedure. Dove testified that officers were used because the detectives could not locate four white inmates in the county jail to use in the lineup. The officers who participated in the lineup were all, like Moon, white, clean shaven, wearing the blue jail uniforms, had short haircuts, and were generally the same height. Moon testified that he could not recall anything about the other lineup participants' physical appearances that were significantly different from his physical appearance. To be sure, Moon remarked after the lineup, "Well, at least they all kind of looked like me." Moon testified, however, that during the lineup, he was "in a state of shock," whereas the officers in the lineup did not appear nervous. Villa and Dove identified the officers in the lineup by their full names in their respective reports but failed to note their status as police officers. Lieutenant Saucedo, however, noted in his report that the lineup participants were police officers. It should be added that Moon chose where he stood in the lineup.

---

[6] Dove was the detective investigating KN's case. KN was unable to identify her attacker in 1985 and the case was inactivated.

No. 21-50193

When DM, KN, and MD arrived to view the lineup, Villa introduced them to one another, and they sat next to one another in the hallway outside the viewing room.  Villa instructed the three witnesses not to discuss with each other their respective incidents.  There is no evidence that the witnesses disregarded this instruction.  Dove was not involved in having the witnesses sit together in the hallway and only learned about it later.  During the lineup, Detective Villa was in the viewing room with each witness, while Detective Dove was in the lineup room.

KN viewed the lineup first.  When the lineup turned and faced, she began trembling and crying and identified her attacker as "[t]he one in the middle, it is the one in the middle."  Moon was the man in the middle. Detective Dove, who was in the other room, stated in his report that at the beginning of the lineup, he heard "a loud cry of grief; it sounded like somebody experienced pain or anguish."  KN was then escorted to a small office, so the other witnesses would not see her crying.

MD viewed the lineup second.  After about fifteen seconds, she identified Moon as the man that burglarized her home.  After MD left the viewing room, Villa instructed the men to change positions.

DM viewed the lineup last.  She previously had seen Moon's photo in the photographic lineup two days earlier and knew Moon's name.  When the participants turned to face DM, she began crying and said that the attacker looked like the man on the far right.  Moon was the man on the far right.  DM said she wanted to be sure, so she asked to see all the men put on ski caps. After seeing all the men in ski caps, DM repeated that she still believed that

6

the man on the far right, Moon, was the man who raped her. DM signed a line-up card reflecting her identification of Moon.[7]

## C.

Moon was indicted and tried for the aggravated sexual assault of DM. DM testified at Moon's trial and unequivocally identified Moon as the man that sexually assaulted her. On January 14, 1988, Moon was convicted of the aggravated sexual assault of DM. Moon was sentenced to seventy-five years' incarceration. He was released in 2004 after serving seventeen years in prison when DNA testing confirmed his innocence.

## II.

On October 23, 2006, Moon filed this suit. Moon originally filed suit against numerous individuals and entities he claimed were responsible for his imprisonment. Moon asserted several claims arising under both federal law and Texas state law. Several defendants were dismissed by agreement of the parties. The district court then dismissed (or granted summary judgment against) all of Moon's claims. *See Moon v. City of El Paso*, 906 F.3d 352, 356 (5th Cir. 2018). Moon appealed the district court's dismissal, and this Court affirmed in part and reversed in part. *Id.* at 360. This Court held, *inter alia*, that the tort of false imprisonment "is a continuing tort in Texas," and

---

[7] Moon submitted an expert report in this case by Michael D. Lyman, Ph.D., attacking the reliability of the lineup. Dr. Lyman opined that the lineup Detectives Dove and Villa conducted with respect to DM was "patently suggestive because Moon was, in fact, the only person in it who appeared in the photo lineup two days earlier." This defect, he says, made the in-person lineup akin to a "showup," which is "inherently more suggestive." Dr. Lyman stated that the defendants should have known about the "suggestive and inappropriate" nature of conducting such a lineup and "[a]bsent any efforts to control all variables that created a 'suggestive' physical lineup, [DM] should not have been shown the physical lineup at all." Dr. Lyman's opinion concluded that the identification procedures used by the officers in this case "were unfairly biased and suggestive."

Moon's cause of action for false imprisonment accrued upon his release in 2004. Therefore, Moon's false imprisonment claim under Texas state law was timely. *Id.* at 358. This Court then remanded to the district court for further proceedings. *Id.* at 361.

On remand, Moon filed his first amended complaint on January 3, 2020. On September 2, 2020, Dove and Olivarez, the only remaining defendants, moved for summary judgment. On October 9, 2020, Moon, with defendants' consent, filed his second amended complaint—the operative complaint when summary judgment was granted—alleging solely that Olivarez and Dove falsely imprisoned him in violation of Texas state law. On February 12, 2021, the district court granted Dove and Olivarez's motion for summary judgment. The district court concluded that Moon failed to show that Olivarez and Dove willfully detained him without authority of law. The district court further held that summary judgment for appellees was appropriate because "several intervening causes broke the causal link" between any actions taken by Olivarez and Dove and Moon's imprisonment. Finally, the district court concluded Olivarez and Dove were entitled to official immunity under Texas state law. Moon has timely appealed.

## III.

We review a district court's grant of summary judgment *de novo*. *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* The court views the evidence in the light most favorable to Moon and draws all

reasonable inferences in his favor. *See Ahders*, 982 F.3d at 315. Moon, however, "cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions." *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012).

The essential elements of false imprisonment under Texas state law are: "(1) willful detention; (2) without consent; and (3) without authority of law." *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). Moon bears the burden of proving all three elements.[8] *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 376 (Tex. 1985); *Wal-Mart Stores, Inc. v. Odem*, 929 S.W.2d 513, 519 (Tex. App. 1996), *writ denied* (Mar. 27, 1997); *Garcia v. Schlumberger Tech. Corp.*, No. 04-17-00180-CV, 2017 WL 5759377, at *2 (Tex. App. Nov. 29, 2017). Liability for false imprisonment in Texas, however, "extends beyond those who willfully participate in detaining the complaining party to those who request or direct the detention." *Rodriguez*, 92 S.W.3d at 507. The first element—willful detention—can be satisfied, even when the defendant does not participate in the detention, if the defendant engages in "conduct that is intended to cause one to be detained, and in fact causes the detention." *Id.* Texas courts have referred to this causation standard as "instigation" of the false imprisonment. *Id.*

---

[8] We recognize that strong probable cause supports the authority of law for Moon's arrest, which suggests that Moon failed to show that he was arrested without authority of law. *See Rogers v. City of Hous.*, 627 S.W.3d 777, 790 (Tex. App. 2021)("[L]egal authority to arrest is shown in the false imprisonment context either by procurement of an arrest warrant or by a showing of probable cause."). But, under Texas law, a warrant is required for the arrest of an individual except under limited circumstances. *See Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991) (*en banc*). None of those limited circumstances applies in this case. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01-14.05. Thus, without a warrant, Moon's arrest in his residential dormitory was "without authority of law."

No. 21-50193

"When the alleged detention results from an unlawful arrest, to prove instigation a plaintiff must show that the defendant clearly directed or requested the arrest." *Rodriguez*, 92 S.W.3d at 507. The arrest must be made by the officer, not of their own volition, but to carry out the request of the defendant. *Id.* As the Texas Supreme Court explained, instigation "is the equivalent, in words or conduct, of 'Officer, arrest that man!'" *Id.* (quoting Restatement (Second) of Torts § 45A cmt. c (Am. L. Inst. 1965)). A defendant may also be liable for "instigating an unlawful arrest if he knowingly provides false information to law enforcement authorities resulting in the arrest." *Id.* at 509. "Merely providing inaccurate or incomplete information, however, will not make a party liable for instigating a subsequent false imprisonment." *Id.* at 510.

Because Olivarez and Dove did not participate in Moon's arrest, Moon must show that Olivarez and Dove instigated his May 1, 1987 arrest to prevail on his Texas false imprisonment claim. We now turn to address this claim.

A.

First, with respect to whether Detective Olivarez instigated Moon's arrest: the evidence shows that Olivarez's involvement in this case was limited to a single conversation with Villa, the lead detective investigating DM's sexual assault. Early in the investigation, Olivarez told Villa to "check the computer so as to find [Moon's] PD number." He further told Villa that he "had read a rape case on the same subject Moon from 1984" and that he also had "booked [Moon] for Burglary of Habitation around November" the year before. It is plain that, in this single conversation, Olivarez did not "clearly direct or request [Moon's] arrest." *Rodriguez*, 92 S.W.3d at 507. Instead, the record is undeniably clear that it was DM's identification of Moon as the man that raped her in the photographic lineup that prompted

10

Moon's arrest.  There is no evidence that Villa proceeded to arrest Moon based on his lone conversation with Olivarez.

Moon nonetheless argues that Olivarez "instigated" his arrest by knowingly making false statements to Villa about Moon's criminal history—*i.e.*, falsely claiming that Moon was a burglar and a rapist.  But, even assuming that Olivarez *did* knowingly make false statements to Villa about Moon's criminal history, Moon failed to establish that Olivarez "instigated" his arrest.[9]  It is not enough for a plaintiff to merely point to any knowing false statement the defendant gave to the police and assert that the defendant "instigated" his arrest.  Rather, the plaintiff must show that the knowingly false statement by the defendant caused his unlawful arrest.[10]  *Rodriguez*, 92 S.W.3d at 507, 509; *see also Alsheikh v. Dyab*, No. 07-08-00162-CV, 2010 WL 1380978, at *4 (Tex. App. Apr. 7, 2010) (affirming lower court finding of instigation where plaintiff falsely reported to the police that his former business partner robbed him at gunpoint).  In this case, the record is clear that it was DM's identification of Moon as her rapist that caused Moon to be arrested—not Olivarez's purported false statements about Moon's criminal history.  *See Rios v. State*, 376 S.W.3d 238, 243 (Tex. App. 2012) (holding that eyewitness statement alone was sufficient to establish probable cause to

---

[9] We note, however, that Olivarez's statement to Villa that he "had read a rape case on the same subject Moon from 1984 and booked him for [burglary] around November of last year" was true.  Moon was indeed previously arrested for aggravated sexual assault and for burglary.  It is of no consequence that Olivarez failed to disclose that the 1984 charges against Moon had been dismissed or that Moon had been acquitted of the prior burglary because "[m]erely providing inaccurate or incomplete information . . . will not make a party liable for instigating a subsequent false imprisonment." *Rodriguez*, 92 S.W.3d at 510.

[10] As we have previously discussed, "instigation" of false imprisonment under Texas law is a causation standard. *Rodriguez*, 92 S.W.3d at 507.  To be liable for "instigation," the knowing false statement provided by the defendant must "in fact cause" or "result[] in" the arrest. *Id.* at 507, 509.

arrest suspect).  In short, any  purported false statement by Olivarez about Moon's criminal history is too attenuated in the light of the victim's identification of Moon as her rapist to be the cause of Moon's arrest.

### B.

Neither does the evidence support the conclusion that Detective Dove instigated Moon's arrest.  Dove's involvement in the purportedly suggestive lineup occurred *after* Moon was arrested.  It follows that, Dove could not have "clearly directed or requested [Moon's] arrest."  *Rodriguez*, 92 S.W.3d at 507.

Moon nevertheless asserts that Dove instigated his imprisonment.  He argues (1) the purportedly suggestive lineup Dove helped conduct "ensured" his imprisonment, (2) Dove made false statements in the KN case, and (3) Dove failed to release Moon when required by law.  These arguments are unconvincing.  First, even if a purportedly suggestive lineup did "ensure" Moon's detention in jail, the lineup occurred after Moon was arrested and in jail.  Thus, the lineup, and Dove's participation in it, did not clearly direct, request, or result in Moon's arrest.  *See Rodriguez*, 92 S.W.3d at 507, 509 (requiring a plaintiff to show that the defendant clearly directed, requested, or knowingly made a false statement that resulted in plaintiff's arrest to prove instigation).  Second, at the time of Dove's purportedly false statements in the KN case, Moon had already been arrested, so neither did those statements cause Moon's arrest.  *See id.* at 509.  Furthermore, any purportedly false statements that Dove may have made in the KN case are unconnected to whether he instigated Moon's arrest in the DM case.  Third, Moon only raised the argument that Dove failed to release him when required by law in a footnote in his opening brief.  This argument is therefore waived. *See Arbuckle Mountain Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 (5th Cir. 2016) ("Arguments subordinated in a footnote are

insufficiently addressed in the body of the brief, and thus are waived."
(internal quotations omitted)).

## IV.

In this appeal, we have noted that the elements of false imprisonment
under Texas state law are (1) willful detention; (2) without consent; and
(3) without authority of law, and that the plaintiff must satisfy all three
elements to prevail on his false imprisonment claim. We have decided this
case on the basis that Moon failed to satisfy the first element—willful
detention by the defendants. Willful detention may be shown even when the
defendant does not actively detain the plaintiff if the defendant instigates the
false imprisonment: that is to say, the defendant engages in conduct that is
intended to cause one to be detained, and in fact causes the detention. There
is no evidence to support Moon's contention that defendants instigated his
arrest, and consequently, he fails on that element. In short, because Moon
fails to demonstrate that his arrest was instigated by Detectives Olivarez and
Dove, his false imprisonment claim under Texas state law fails. Accordingly,
the district court did not err in granting summary judgment in favor of
Olivarez and Dove.[11]

For the foregoing reasons, the judgment of the district court is, in all
respects,

AFFIRMED.

---

[11] Because we conclude that Moon failed to show that Olivarez and Dove willfully
detained him, and therefore his false imprisonment claim fails, we will not reach the
remaining issues in this case.